IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| | § | |
| VS. | § | CRIMINAL NO. H-11-83 |
| | § | |
| JOSE MIGUEL TREVIÑO, | § | |
| | § | |
| Defendant-Petitioner. | § | |
| | § | |
| | § | |
| CIVIL ACTION H-14-830 | § | |

**MEMORANDUM AND OPINION**

The petitioner, Jose Miguel Treviño, seeks habeas corpus relief under 28 U.S.C. § 2255, challenging a 2012 sentence. Treviño was charged in a superseding indictment with conspiracy to possess cocaine with the intent to distribute it, conspiracy to use and carry firearms during drug-trafficking conspiracy offenses committed on two occasions, and aiding and abetting the firearms offense. He pleaded guilty with no plea agreement to the drug-trafficking conspiracy and the firearms offenses. He was sentenced to the statutory minimum of 180 months, consisting of 120 months on the conspiracy counts to run concurrently, and 60 months on the § 924(c) firearms count, to run consecutively to the 120-month sentence. His direct appeal was unsuccessful. In March 2014, Treviño filed this timely *pro se* motion to vacate his sentence, (Docket Entry No. 123, 11-cr-83), and the government responded. (Docket Entry No. 129). Based on careful consideration of the pleadings; the motion and response; the record; and the applicable law, this court grants respondent's motion for summary judgment; denies Treviño's § 2255 motion; and, by separate order, enters final judgment in the civil case. The reasons are set out below.

I.  **Background**

   A.  **Treviño's Claims**

Treviño raises three grounds of error. (Docket Entry No. 123, at 4). The first ground is that the 180-month term of imprisonment violated *Alleyne v. United States*, 133 S. Ct. 2151 (2013). He argues that the 60-month consecutive sentence imposed for aiding and abetting the use and carrying of a firearm during and in relation to a drug-trafficking offense under 18 U.S.C. §§ 2 and 924(c)(1)(A) violated his Sixth Amendment rights under *Alleyne*, and that his appellate counsel erred by failing to notify the Fifth Circuit of the pendency of the *Alleyne* case before the Supreme Court. He contends that the Fifth Circuit did not review his sufficiency of the evidence argument as favorably as it would have had the claim been preserved. (Docket Entry No. 123, pp. 17-19).

In his second ground, Treviño argues that the government engaged in sentencing manipulation because the undercover officer offered to supply cocaine in a "reverse buy" sting. Treviño generally faults his trial attorney's "failures in negotiating, recommending and permitting" Treviño "to enter into the terms of the Plea Agreement," making his plea involuntary and resulting in a due process violation. (Docket Entry No. 123, pp. 17, 20-21).

In his third ground of error, Treviño argues that this district court misapplied the sentencing guidelines, and that his trial counsel was generally ineffective at sentencing and on appeal. He argues that he should not have received a six-level increase for additional contraband attributed to him under *Alleyne*. (Docket Entry No. 123, pp. 17, 22).

Each ground is analyzed below under the applicable legal standards.

   B.  **The Legal Standards Under § 2255**

Relief under 28 U.S.C. § 2255 requires a petitioner to show that: (1) "the sentence was

imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) the sentence "was in excess of the maximum authorized by law"; and (4) that the sentence is otherwise "subject to collateral attack." 28 U.S.C. § 2255 (2000). A motion to vacate a sentence "may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed." *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999)(citations omitted); *see Davis v. United States*, 417 U.S. 333, 346 (1974); *Hill v. United States*, 368 U.S. 424, 428 (1962).

To obtain postconviction relief in a collateral attack on a ground not raised at trial, a defendant must show either (1) cause excusing his procedural default and actual prejudice resulting from the alleged error, *see United States v. Frady*, 456 U.S. 152, 167-68 (1982), or (2) that he is actually innocent. *United States v. Shaid*, 937 F.2d at 228, 232 (5th Cir. 1991). "'Actual innocence' means 'factual innocence, and not mere legal insufficiency.'" *Bousley v. United States*, 523 U.S. 614, 623-24 (1998); *United States v. Torres*, 163 F.3d 909, 911 n.9 (5th Cir. 1999). To prove actual innocence, the petitioner "must demonstrate that, in light of all the evidence, it is more likely than not that no [fact finder] would have convicted him." *Id.* at 912 (citations and quotations omitted).

C.  **Factual and Procedural Background**

Treviño and José Garcia Pardo, also known as "El Chino," were charged in a superseding indictment with: (1) conspiracy to possess with intent to distribute five kilograms or more of cocaine, committed between December 8, 2010 and January 13, 2011, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1), 846 (Count 1S); (2) aiding and abetting the attempted possession with intent to distribute more than five kilograms of cocaine, committed on January 13, 2011, in violation of 21 U.S.C.

3

§§ 841(a)(1), 841(b)(1) and 846, and 18 U.S.C. § 2 (Count 2S); (3) conspiracy to use and carry firearms during and in relation to the drug trafficking conspiracy crimes alleged in Counts 1S and 2S, committed between December 8, 2010 and January 13, 2011, in violation of 18 U.S.C. §§ 924(c)(1) and 924(o) (Count 3S); and (4) aiding and abetting the use and carrying of the firearms alleged in Count 3S, during and in relation to the conspiracy drug trafficking crimes alleged in Counts 1S and 2S, committed on January 13, 2011, in violation of 18 U.S.C. § 924(c)(1)(A) and 18 U.S.C. § 2 (Count 4S). (Docket Entry No. 36).

On April 11, 2012, Treviño pleaded guilty, without a plea agreement, to Counts 1S, 3S, and 4S. At the rearraignment, Treviño was advised, and stated under oath that he understood, that the minimum sentence under Count 1S was 10 years and the maximum was life; that Count 3S carried a maximum 20-year sentence; and that Count 4S carried a consecutive mandatory 5-year sentence. (Docket Entry No. 113, at 21-22, 33-34).

At the rearraignment, the government submitted the following factual basis:

> If this case were tried, the government would prove beyond a reasonable doubt that [on] November 2010, Special Agent Farley of the ATF received information that José Miguel Treviño was the leader of an experienced armed home invasion robbery crew operating in Houston, Texas.
> On December 8, 2010, an undercover ATF special agent met with Mr. Miguel Treviño and Mr. Garcia-Prado[sic] in the parking lot of [a] strip mall located in Houston, Texas. During this meeting the undercover agent told Mr. Treviño that he was a disgruntled narcotics carrier for a drug trafficking organization and would be interested in contracting him to rob around 25 to 35 kilograms of cocaine from a stash house. The undercover explained to them that there are always two men that guard the cocaine at the stash house.
> During this meeting, Mr. Treviño stated that he expected to be provided 5 kilograms of cocaine to the undercover agent, and that would be the undercover agent's cut. During this meeting, Mr. Treviño stated that he and his armed robbery crew would not be leaving anyone in the stash house alive and he guaranteed to the UC that his armed robbery crew would not come back to him.
> On January 6, 2011, in furtherance of the conspiracy, the undercover met with

>Mr. Garcia-Pardo at the parking lot in Houston, Texas. During this meeting, an individual that was identified as a former Mexican military told the undercover that two other individuals who were also former Mexican military would be committing the armed robbery for cocaine. Mr. Pardo asked if the UC had a firearm silencer that he could use during the robbery, and the UC replied that he did not. . . .
>
>Also on January 11, 2011, Mr. Pardo met with the UC again to discuss and finalize the meeting. During this meeting, Mr. Pardo stated that he had constructed a firearm that he would use during the robbery, and that he would tie the undercover agent up to mimic a real robbery. The UC told Mr. Pardo that he only wanted 5 kilograms from the robbery for his proceeds.
>
>On January 13, 2011, at a final meeting, Mr. Treviño, Mr. Pardo, and an individual identified as Mr. Victor Pastrana, met in northwest Harris County. During this meeting, the undercover verified that Mr. Treviño and Mr. Pardo and Mr. Pastrana were ready to commit the armed robbery for cocaine. He later learned that they brought the firearms with them as well.
>
>On this date, during an arrest, law enforcement agents arrested Mr. Treviño, Mr. Pardo and Mr. Pastrana. During this arrest they located and identified one short-barreled shotgun, a set of body armor, numerous rounds of ammunition, a mask, rubber gloves, a knife, and work gloves.
>
>After their arrest, these individuals provided statements. During one of the statements that was provided, Mr. Pardo admitted to possessing the firearm for the purpose of committing the robbery. Mr. Pardo also explained that he believed that each member was supposed to receive 5 kilograms of cocaine.
>
>Agents listened to audio recordings that were given in the back of the patrol car where during this statement individuals stated that they were glad that they did not have to kill anyone during the course of this robbery for cocaine.

(Docket Entry No. 113 at 40-43).

Treviño agreed that these facts were true and correct with the exception that he denied being the leader of a home-invasion robbery "crew." (Docket Entry No. 113, pp. 43-44). Treviño acknowledged that if the district court disagreed with him about this fact, he could get a longer sentence. (*Id.*). The court found that Treviño was making his plea knowingly, intentionally, and voluntarily, with counsel's advice, and accepted the plea.

The PSR contained additional details about what Treviño and Pardo told the undercover agent. (PSR ¶ 10-14). Treviño told the agent that he would commit the robbery and introduced

Pardo as his "point man." At another meeting, Pardo said that he had made a firearm silencer that he would use to carry out the armed robbery, and that although he intended to kill anyone in the stash house who was armed, he would only tie up the agent. At the agent's request, Pardo agreed to only tie up the agent's friend, Daniel. When the agent asked Pardo what he intended to do with Rudy, Pardo related his intention to "finish him." Pardo said that the armed robbery would be on January 13, 2011. On January 13, 2011, the undercover agent met for a final time with Treviño, Pardo, and Victor Pastrana. The agent verified that the men were ready to commit the armed robbery and that they had brought their firearms with them. The agent described Rudy and Daniel so that there would be no confusion about who the suspects were to secure and who they were to kill. Treviño and Pardo explained in detail how they were going to tie up Daniel and kill anyone in the stash house who was carrying a firearm. (PSR ¶15).

Treviño, Pardo, and Pastrana were arrested later that day. (PSR ¶16). In the vehicle they were driving, the officers found a 12-gauge short-barreled shotgun loaded with one shotgun shell, a .39 caliber revolver loaded with five rounds; and a .9 mm semi-automatic pistol with one magazine, as well as rounds of ammunition, a military-issued fragmentation vest, knives, a pair of work gloves and 8 latex gloves, and a Halloween mask. (*Id.*). Pardo admitted in a post-arrest statement that he was going to commit an armed robbery for cocaine with Treviño and Pastrana and claimed possession of the short-barreled shotgun found in the vehicle. (PSR ¶17). Pardo admitted that he and Treviño were in the conspiracy from the beginning, while Pastrana joined on January 13, 2011, after hearing Treviño and Pardo talking about the planned robbery. Pardo claimed that they were not really going to kill anyone, and instead planned only to steal the cocaine from the stash house. (*Id.*).

Treviño also gave a postarrest statement. (PSR ¶18). He denied any involvement with the robbery plan and stated that he was just driving Pardo around Houston. He claimed that Pardo was going to pay him $1,000 to drive Pardo to meet an unknown man to buy drugs. Treviño claimed he had never seen Pastrana before the day of their arrest. (*Id.*). Pastrana did not make a statement. (PSR ¶19).

The PSR also described audio recordings made while the suspects were detained in a marked police patrol car. (PSR ¶20). Pardo asked Pastrana if he thought the police would find the firearms hidden in their vehicle, and Pastrana replied in the affirmative. Treviño and Pastrana both admitted that they had "messed up," and Treviño told Pastrana that Pardo was probably "singing like a canary." At least twice, Treviño and Pastrana said that they were glad they had not killed anyone. (*Id.*).

The PSR scored Treviño under grouped Counts 1S and 3S at base offense level 34 based on attributing more than 15 but less than 50 kilos of cocaine, (USSG 2D1.1(c)(3)), and recommended a two-level upward adjustment for a credible threat of violence (USSG 2D1.1(b)(2)), for a total offense level score of 36. (PSR ¶¶ 29-38). At the November 6, 2012 sentencing, Treviño objected to the two-level enhancement and argued that he should be responsible for only 5 kilograms of cocaine. The objections reflected Treviño's understanding that he would receive a consecutive five-year sentence under Count 4S. Treviño also argued a form of entrapment. The court found there was no evidence or basis supporting Treviño's claims of "no credible threat of violence," "entrapment," or sentencing manipulation "beyond what the defendant would otherwise have been willing of his own free will to engage in ... ." (Docket Entry No. 107). The court granted Treviño a three-level reduction for acceptance of responsibility and otherwise adopted the PSR. (Docket

Entry No. 107). The guideline range under Counts 1S and 3S was 135 to 235 months, followed by a consecutive 60 months under Count 4S, exceeding the statutory maximum for Counts 1S and 3S. (Docket entry 107, p.5). The court sentenced Treviño to 120 months on each of Counts 1S and 3S, to run concurrently, and to 60 months on Count 4S, to run consecutively, for a total sentence of 180 months. (Docket Entries No. 107, pp.7-8).

On appeal, *United States v. Treviño*, 547 F. App'x 541 (5th Cir. Nov. 18, 2013)(unpublished), Treviño argued that the evidence was insufficient to support his guilty plea to Count 4S. The appellate court rejected his claim, applying a plain error analysis but citing *United States v. Lopez–Urbina*, 434 F.3d 750, 757-59 (5th Cir. 2005), and that "[a]lthough there was no evidence that Treviño procured or provided the shotgun to his codefendant, a reasonable inference may be fairly drawn from the facts contained in the record that Treviño organized and planned the robbery of a cocaine stash house and that, in furtherance of the operation, he facilitated or encouraged his codefendant to use or carry a firearm." *Id.* at 759. This § 2255 motion followed.

## II. Analysis

### A. The Claim Under *Alleyne v. United States*

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court held that any fact that increases the statutory maximum sentence had to be based on a proof beyond a reasonable doubt and a jury finding. *Id.* at 483. In *Harris v. United States*, 536 U.S. 545 (2002), the Court held that judicial factfinding that increases the mandatory minimum sentence is constitutionally permissible. That was overruled in *Alleyne*, 133 S. Ct. at 2158. In that case, the Supreme Court held that a fact that increases a defendant's mandatory minimum sentence must be submitted to the fact-finder and found beyond a reasonable doubt. *Id.*

Treviño cannot recover on the basis of *Alleyne*. First, Treviño is raising the claim on collateral review. The Supreme Court did not state in Alleyne that the rule would apply retroactively on collateral review. The Fifth Circuit has held that *Alleyne* does not apply retroactively on collateral review under a § 2255 motion. *See In re Kemper*, 735 F.3d 211, 212 (5th Cir. 2013); *Alsop v. Chandler*, 551 F. App'x 217, 218 (5th Cir. 2014)(unpublished)(citations omitted). And Treviño's claim that his sentence was improperly enhanced based on the court's determination of the amount of cocaine he is responsible for is a claim that the sentence is invalid, not the conviction. It is not an actual innocence claim.

Moreover, the record undermines Treviño's argument, even assuming retroactive application. Treviño stated at his rearraignment that he understood that he faced a 10-year statutory minimum under Count 1S for a conviction of trafficking involving 5 kilograms; a larger amount was not required. And Treviño stated that he understood he would receive a mandatory 5-year prison term under Count 4S consecutive to the sentence imposed under Count 1S. Finally, counsel objected at sentencing to holding Treviño responsible for more than 5 kilograms of cocaine. The court overruled the objection, and the Fifth Circuit agreed. No *Alleyne* error occurred, even assuming retroactivity.

**B.     The Claim of Ineffective Assistance of Counsel**

Claims for ineffective assistance of counsel are analyzed under *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 390, 390–91 (2000). Counsel's performance is constitutionally deficient if it falls below an objective standard of reasonableness. *See United States v. Molina–Uribe*, 429 F.3d 514, 518 (5th Cir. 2005), *cert. denied*, 547 U.S. 1041(2006). Scrutiny

9

of counsel's performance is "highly deferential." *Id.* (quoting *Strickland*, 466 U.S. at 689). An attorney's failure to make meritless arguments does not demonstrate deficient performance and cannot form the basis for relief under § 2255. *See United States v. Kimler*, 167 F.3d 889, 892 (5th Cir. 1999). To prove prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Harris*, 408 F.3d 186, 189 (5th Cir.) (quoting *Strickland*, 466 U.S. at 694), *cert. denied*, 546 U.S. 919 (2005). A claim that counsel has provided ineffective assistance on appeal similarly requires a defendant to show that his appellate attorney was objectively unreasonable in failing to raise a nonfrivolous issue on appeal. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Counsel's failure to raise an issue on appeal is deficient performance only when that "fall[s] below an objective standard of reasonableness." *Id.* Actual prejudice requires showing a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on his appeal." *Id.* Under this standard, the record clearly fails to show deficient performance by counsel at sentencing or on appeal, and fails to show prejudice as a result of the error Treviño claims. *See United States v. Suarez*, 575 F. App'x 463, 464-465 (5th Cir. 2014). This claim does not provide a basis for relief.

### C.    The Claim of Sentencing Entrapment or Manipulation

The court rejected Treviño's claim of sentencing entrapment or manipulation at the sentencing hearing. The record amply supports this result. *See United States v. Lutcher*, 87 F.3d 1312 (5th Cir. May 17, 1996)(unpublished)(citing *United States v. Washington*, 44 F.3d 1271, 1279 (5th Cir. 1995)). Treviño's sentencing claim does not support relief under § 2255, *see United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992), and the record contradicts his ineffective assistance

of counsel argument, *see United States v. Suarez*, 575 F. App'x 463, 464-465. Treviño is not entitled to the relief he seeks on this basis.

### III. Conclusion

The respondent's motion to dismiss or in the alternative for summary judgment is granted (Docket Entry No. 129, 11-cr-83). Treviño's motion to vacate under 28 U.S.C. § 2255 is denied (Docket Entry No. 123, 11-cr-83; Docket Entry No. 1, 14-cv-830). Final judgment dismissing Treviño's civil action, 14-cv-830, is separately entered, and any other pending motions are denied as moot.

The showing necessary for a certificate of appealability is a substantial showing of the denial of a constitutional right. *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000) (citing *Slack v. McDaniel*, 429 U.S. 473, 483 (2000)). A petitioner makes a substantial showing when he demonstrates that his petition involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues deserve encouragement to proceed further. *See Clark v. Johnson*, 202 F.3d 760, 763 (5th Cir. 2000). Treviño has not made the showing, and a certificate of appealability is not issued.

SIGNED on June 15, 2015, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge